**LUMA CORPORATION, Plaintiff,**

v.

**STRYKER CORPORATION; Karl Storz Endovision, Inc.; and Karl Storz Endoscopy–America, Inc., Defendants.**

**No. CIV.A. 1:02–1132.**

United States District Court,
S.D. West Virginia,
Bluefield Division.

Feb. 22, 2005.

---

Jerry J. Cameron, Esquire, Brewster, Morhous, Cameron, Mullins, Caruth, Moore, Kersey & Stafford, Bluefield, WV, Benjamin T. Duranske, Esquire, Paul J. Andre, Esquire, Lisa Kobialka, Esquire, Perkins Coie LLP, Menlo Park, CA, Counsel for Plaintiff.

John H. Shott, Esquire, Shott, Gurganus & Williamson, Bluefield, WV, Timothy J. Malloy, Esquire, Gregory J. Vogler, Esquire, Robert A. Surrette, Esquire, McAndrews, Held & Malloy, Ltd., Chicago, IL, Wayne L. Evans, Esquire, Katz, Kantor & Perkins, Bluefield, WV, Wesley W. Whitmyer, Jr., Esquire, Richard J. Basile, Esquire, David W. Aldrich, Esquire, St. Onge, Steward, Johnston & Reens LLC, Stamford, CT, for Defendants.

## MEMORANDUM OPINION AND ORDER

VANDERVORT, United States Magistrate Judge.

Plaintiff alleges Defendants' infringement upon a certain patent entitled "Managing Information in an Endoscopy System" also referred to as "the '801 patent" and requests injunctive and monetary relief pursuant to 35 U.S.C. §§ 271, *et seq.* Defendants Karl

---

1. By stipulation of the parties and Order of the Court, the parties were to exchange expert re-

Storz Endoscopy–America, Inc. [KSEA], and Stryker Corporation [Stryker] contend in defense that the claims of the '801 patent are invalid because prior art anticipates and/or renders them obvious. KSEA submitted the expert report of Mr. Erhan Gunday and Stryker submitted the reports of Dr. Roy Nutter and Dr. John Adkins in support of their defenses. Plaintiff then submitted the reports of Dr. John Hossack and Dr. James Johnston in rebuttal. Defendants then submitted further reports of their experts and Stryker submitted Declarations of Dr. Nutter and Dr. Adkins in support of its Contingent Motion for Summary Judgment of Invalidity of the '801 Patent to which Plaintiff takes exception. Pending are Plaintiff's Motions as follows: (1) Motion to Exclude Erhan Gunday's Untimely April 27, 2004, Expert Report (Document No. 337 and 338 (under seal).), (2) Motion to Strike New Opinions Contained in Dr. Roy S. Nutter, Jr's Declaration Dated May 27, 2004, and Memorandum in Support (Document Nos. 341 and 342.), (3) Motion to Strike New Opinions Contained in Dr. John M. Adkins' Declaration Dated June 1, 2004, and Memorandum in Support (Document Nos. 344 and 345.), (4) Motion to Exclude Dr. John M. Adkins' Untimely May 21, 2004, Expert Report and Memorandum in Support (Document Nos. 347 and 348 (under seal).) and (5) Motion to Exclude Dr. Roy S. Nutter's Untimely May 21, 2004, Expert Report and Memorandum in Support (Document Nos. 349 and 350 (under seal).) KSEA, and Stryker have filed Responses to Plaintiff's Motions (Document Nos. 360 and 361.), and Plaintiff has filed Replies (Document Nos. 363—366, 368.).

## FACTUAL BACKGROUND

1. *Motion to Exclude Erhan Gunday's Untimely April 27, 2004 Expert Report.*

KSEA provided Plaintiff with the Expert Report of Erhan H. Gunday on February 25, 2004.[1] (Document No. 338.) Mr. Gunday

---

ports in two stages: disclosure for all parties on any issues upon which they bear the burden of

identified numerous different references in patents predating the '801 patent disclosing each element of the claims which Plaintiff contends Defendants infringed. Plaintiff provided KSEA with rebuttal expert reports of Dr. John A. Hossack and Dr. James D. Johnston on March 30, 2004. KSEA then provided Plaintiff with the Supplemental Expert Report of Mr. Gunday on April 27, 2004, two days before Mr. Gunday's deposition. Mr. Gunday cites the operation manuals for two devices not referenced in his initial report and the Rule 30(b)(6) deposition testimony of two employees of the manufacturer of the two devices taken on April 2, 2004, in support of his additional opinions.

Plaintiff claims that Mr. Gunday's April 27, 2004, supplemental report must be excluded pursuant to Federal Rules of Civil Procedure 37(c)(1) [2] and 16(f) [3]. Plaintiff asserts that Mr. Gunday's April, 2004, report contains new theories of invalidity, *i.e.*, theories not raised in Mr. Gunday's initial February, 2004, report, and references for the first time the operation manuals which Mr. Gunday had or could have had before he submitted his February, 2004, report. Plaintiff contends that KSEA submitted Mr. Gunday's report beyond the time agreed upon and established by the Court for doing so and after receiving Plaintiff's rebuttal expert reports. Thus, Plaintiff claims that KSEA has violated Rule 26(a)(2)(B) and (C) [4] by submitting Mr. Gunday's April, 2004, supplemental report containing new theories of invalidity after the date for exchanging expert reports, February 25, 2004, and Mr. Gunday's April, 2004,

---

proof by February 25, 2004, and rebuttal expert reports by March 30, 2004. The parties were to complete discovery with respect to expert witnesses by May 31, 2004 (Document Nos. 39, 246—47, 270—72.) It appears that the parties met the February and March deadlines. Trial was then scheduled to commence on August 16, 2004. The District Court has since issued revised Scheduling Orders in July and December, 2004, and trial is now scheduled to commence on May 31, 2005. (Document Nos. 369 and 416.)

**2.** Rule 37(c)(1) provides as follows:

A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, those sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

**3.** Rule 16(f) provides as follows:

If a party or party's attorney fails to obey a scheduling or pretrial order, ... the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompli-

ance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

**4.** Rule 26(a)(2)(B) and ( C) provide respecting disclosure of expert reports as follows:

(B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

(C) These disclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial or, if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph 2(B), within 30 days after the disclosure made by the other party. The parties shall supplement these disclosures when required under subdivision (e)(1).

report cannot properly be regarded a supplementation under Rule 26(e)(1) [5] because Mr. Gunday's new theories are not based upon any new evidence or information. Citing the five-factor test adopted by the Fourth Circuit in *Southern States Rack and Fixture, Inc., v. Sherwin–Williams Company*, 318 F.3d 592 (4th Cir.2003), Plaintiff asserts that KSEA's submission of Mr. Gunday's supplemental report constitutes unfair surprise because the report contains new theories and opinions respecting invalidity and Plaintiff cannot cure the surprise because the time period for expert discovery has elapsed. Plaintiff contends that it would be prejudiced by the allowance of Mr. Gunday's second report because it would be required to ask its experts to address Mr. Gunday's new theories. Plaintiff argues further that if Mr. Gunday's second report were allowed, a continuance of the trial which was then scheduled to commence in August, 2004, might be necessary so that Plaintiff could obtain its experts' responses to Mr. Gunday's second report. Plaintiff further states that Mr. Gunday's second report has little importance because Mr. Gunday did not rely on any new evidence which KSEA or Mr. Gunday did not have before KSEA submitted his first report. Finally, Plaintiff contends that there is and can be no reasonable explanation for KSEA's submission of Mr. Gunday's second report well after the time for doing so had passed and Plaintiff had submitted its experts' rebuttal expert reports.

KSEA filed its Opposition to Plaintiff's Motion to Exclude Mr. Gunday's April 27, 2004, Report (Document No. 360.) stating that it did not have a complete copy of the operation manuals and transcripts of deposition testimony relating to them until after February 25, 2004, when initial expert disclosures were required. KSEA claims that it provided Mr. Gunday with the operation manuals in March and the deposition transcripts in April, 2004, and, having this further information, he supplemented his February 25 report. KSEA asserts that Plaintiff was not surprised or prejudiced by the disclosure because Plaintiff had the manuals and knew that Defendants' experts were relying on them and Mr. Gunday stated in his February 25 report that he would supplement it based upon new information. KSEA states that Plaintiff had ample opportunity to cure any surprise it experienced because Mr. Gunday's second report was provided before the close of expert discovery, before his deposition and nearly four months before trial. KSEA claims that there has been no disruption of trial and that Mr. Gunday's second report is extremely important because the report devastates Plaintiff's case. Thus, KSEA argues that exclusion of Mr. Gunday's supplemental report is not appropriate in view of the *Southern States* factors.

Plaintiff filed a Reply in Support of its Motion (Document No. 368.) arguing that KSEA has failed to provide a reasonable explanation for waiting to submit Dr. Gunday's second report until after Plaintiff submitted its expert reports in rebuttal. Plaintiff states that KSEA could have obtained the manuals before February 25 and notes that Stryker had them, provided them to Plaintiff on February 11, 2004, and provided them to KSEA on February 26, 2004. Plaintiff points out that KSEA did not seek to extend the expert report deadline or obtain leave of Court to submit Mr. Gunday's second report. Plaintiff reiterates that it is prejudiced because it had no opportunity to rebut under the Court's Scheduling Order.

2. *Motion to Exclude Dr. Roy S. Nutter's Untimely May 21, 2004, Expert Report and Motion to Exclude Dr. John M. Adkins' Untimely May 21, 2004, Expert Report.*

Plaintiff cites the same Rules and case law and states essentially the same reasons why

---

**5.** Rule 26(e)(1) provides as follows:

A party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. With respect to the testimony of an expert from whom a report is required under subdivision (a)(2)(B) the duty extends both to information provided through a deposition of the expert, and any additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due.

Dr. Nutter's and Dr. Adkins' second reports should be excluded as it did in moving to exclude Mr. Gunday's second report. (Document Nos. 348 and 350.) Stryker submitted the Rule 26(a)(2)(B) Expert Witness Reports of Dr. Roy S. Nutter and Dr. John M. Adkins on February 25, 2004. Dr. Nutter mentioned in his initial report both of the operation manuals which Mr. Gunday relied upon for the first time in his second report, and Dr. Adkins appears to have mentioned one of them in his initial report. As stated above, Plaintiff submitted rebuttal expert reports of Dr. Hossack and Dr. Johnston on March 30, 2004. Dr. Hossack and Dr. Johnston state their opinions respecting the two operation manuals for the two devices. Stryker then submitted Dr. Nutter's and Dr. Adkins' Supplemental Reports on May 21, 2004, ten days before the close of expert discovery, six days before Dr. Nutter's deposition and four days before Dr. Adkins' deposition. Dr. Nutter includes further references to the operation manuals of the two devices which he mentioned in his initial report and citations to the April 2, 2004, deposition testimony of the employees of the manufacturer of the devices in support of his opinions. Dr. Adkins also includes reference to the operation manuals of both devices and the deposition testimony.

Plaintiff contends that Dr. Nutter and Dr. Adkins, having Plaintiff's expert rebuttal reports and seeing deficiencies in their initial reports, changed their invalidity theories and stated new theories of invalidity in their second reports to correct those deficiencies. Plaintiff claims that Stryker filed Dr. Nutter's and Dr. Adkins' second reports beyond the time allowed for doing so, has no substantial justification for it, and Plaintiff is prejudiced. Citing *Southern States, supra,* Plaintiff contends that Stryker's submission of the reports constitutes unfair surprise which Plaintiff cannot cure; allowing them would affect the trial date; the reports have little importance; and Stryker has no reasonable explanation for submitting them.

Stryker states that Dr. Nutter's and Dr. Adkins' initial reports were timely submitted pursuant to the stipulated and ordered schedule and referred to all operating manuals in their initial reports. Stryker asserts that Dr. Nutter and Dr. Adkins properly supplemented their initial reports under Rule 26(e)(1) based upon information gained through the April 2, 2004, Rule 30(b)(6) depositions of two persons employed by the company which manufactured the devices covered by the operation manuals. Stryker contends that Dr. Nutter and Dr. Adkins did not change the basis of their opinions in their supplemental reports but provided citations to the manuals and deposition testimony as it clarified and interpreted the information contained in the manuals. Stryker states that Plaintiff's Motion to Exclude its experts' supplemental reports must be denied because Plaintiff cannot satisfy the *Southern States* five-factor test. Stryker claims that there has been no unfair surprise because Plaintiff knew from Stryker's interrogatory responses that it would rely upon the manuals and Dr. Nutter and Dr. Adkins indicated in their initial reports that they reserved the right to supplement their reports in view of the further discovery. Stryker further states that Plaintiff cured any surprise it experienced when it took Dr. Nutter's and Dr. Adkins' depositions. Stryker states that there can be no disruption of the trial because it submitted the reports well before trial and Dr. Nutter and Dr. Adkins did not change the substance or basis of their opinions. Stryker takes the position that the reports are important because they serve the public policy favoring patent invalidity.

Plaintiff contends in its Reply to Stryker's Response respecting Dr. Adkins' second report (Document No. 365.) that Dr. Adkins' second report is untimely, contains new information which should have been provided in his initial report and does not constitute a supplementation within the meaning of Rule 26(e)(1). Plaintiff states that it is clearly prejudiced by Stryker's submission of Dr. Adkins' second report because it "will have to expend considerable time and expense reconsulting with its expert" and "will have difficulty incorporating new information into its litigation strategy." In its Reply to Stryker's Response respecting Dr. Nutter's second report (Document No. 366.), Plaintiff raised essentially the same arguments claiming that Dr. Nutter's second report cannot properly be regarded a supplementation un-

der Rule 26(e)(1) because Dr. Nutter does not rely upon any additional or corrective information which he did not have when he issued his original report. Thus, Plaintiff claims that Stryker has no justifiable reason for submitting Dr. Nutter's second report, Dr. Nutter's second report violates Rule 26, and Rule 37(c)(1) mandates its automatic exclusion.

3. *Motion to Strike New Opinions Contained in Dr. Roy S. Nutter, Jr's Declaration Dated May 27, 2004, and Motion to Strike New Opinions Contained in Dr. John M. Adkins' Declaration Dated June 1, 2004.*

Plaintiff states the same reasons as set forth above respecting the second or supplemental expert reports of Dr. Nutter and Dr. Adkins for requesting that the Court strike Dr. Nutter's new opinions stated in his May 27, 2004, Declaration and Dr. Adkins' new opinions stated in his June 1, 2004, Declaration as the Declarations are attached to Stryker's Contingent Motion for Summary Judgment of Invalidity of the '801 Patent.[6] (Document Nos. 342 and 345.) Plaintiff contends that the Declarations contain new theories of invalidity and conclusory statements respecting alleged prior art references which were not disclosed in the experts' original or second opinions specifying the paragraphs of the Declarations which contain them. Stryker responds that the Declarations were properly filed under Rule 56 and should not be stricken for the same reasons the experts' second or supplemental reports should not be excluded. (Document No. 361, pp. 19—20.) In Reply (Document Nos. 364 and 365.), Plaintiff reiterates that "[b]ecause the Federal Rules of Civil Procedure strictly prohibit the introduction of new evidence after evidentiary deadlines have passed without leave of court, a declaration attached to a motion for summary judgment can only contain expert opinions previously disclosed in timely submitted expert reports."

## DISCUSSION

1. *The Motions to Exclude the Experts' Second or Supplemental Reports.*

The Court is guided by decisions of Courts in this Circuit to conclude that Plaintiff's Motions are properly considered under Rule 16(f), not Rule 37(c)(1); Defendants' experts' second or supplemental reports should be permitted because no deadline was established in the agreed and ordered schedule in this case for submitting further expert reports and the time for doing so was therefore supplied by the Rules; and, assuming that Defendants violated the schedule in submitting their experts' further reports, Plaintiff was not prejudiced and exclusion is therefore not appropriate under the established test. This conclusion is reached through a non-mechanistic accommodation of the Rules to the circumstances in issue with due regard for the Court's interest in maintaining its docket and serves the basic policies underlying the Rules favoring substance over form and adjudication of matters on the merits as prescribed and evident in the decisions summarized below.

As in this case, in *Akeva L.L.C. v. Mizuno Corporation,* 212 F.R.D. 306, 309 (M.D.N.C.2002), the parties agreed to disclosure of expert reports in two stages such that the party bearing the burden of proof on an issue was required to make expert disclosures first and then a month later any party offering expert testimony in rebuttal was required to disclose. The parties initially exchanged expert reports at about the same time and then about two weeks before discovery closed, plaintiff identified a new expert and offered him for deposition. Shortly after the close of discovery, plaintiff notified defendants that plaintiff's first expert witness would supplement his report. Defendants moved to exclude these expert reports claiming that plaintiff should have disclosed them at the time of the initial disclosure. The Court stated that "[w]hen a dispute arises concerning violation of expert disclosure obligations pursuant to a court approved discovery plan, the Court should first look to

---

6. Stryker filed its Contingent Motion for Summary Judgment of Invalidity of the '801 Patent (Document No. 303.) and the Declarations of Dr. Adkins and Dr. Nutter (Document Nos. 305 and 306.) on June 1, 2004, the day after the closure of expert discovery.

Rule 16(f) for determining both compliance and sanctions as opposed to Rule 37(c). Rule 16(f) specifically speaks to noncompliance with a scheduling or pretrial order. Rule 37(c), on the other hand, is self-executing and will likely come into play later in the court proceedings, often at or near trial. It serves the situation where there is no discovery plan and the timing of the parties' discovery is controlled only by the Federal Rules of Civil Procedure." *Id.*, at 309. The Court noted that the schedule as agreed upon anticipated only two stages of expert disclosure and the parties could have agreed upon a three or four stage schedule. The Court found that plaintiff's first expert was supplementing his original opinion because it was incomplete and stated that "Rule 26(e) envisions supplementation when a party's discovery disclosures happen to be defective in some way so that the disclosure is incorrect or incomplete and, therefore, misleading. It does not cover failures or omission because the expert did an inadequate or incomplete preparation. To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would reek havoc in docket control and amount to unlimited expert opinion preparation." *Id.*, 212 F.R.D. at 310 (Citations omitted.) The Court deemed plaintiff's first expert's further opinion "not supplementation, but merely an out-of-time disclosure" and concluded that plaintiff had violated Rule 16(f) by attempting to introduce additional expert testimony beyond the time authorized by the scheduling order. *Id.*, 212 F.R.D. at 310–11. Based upon consideration of whether plaintiff delayed deliberately in providing the further evidence, the evidence was important, defendants were prejudiced and what disruption occurred as a consequence of the untimely expert testimony, the Court found that the first expert's supplementation of his initial report should be denied and the report of plaintiff's new expert should be permitted.

In *Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 49 F.Supp.2d 456 (D.Md.1999), a scheduling order was in place providing that plaintiffs would make expert disclosures and then about six months later defendants would do so. Plaintiffs made a timely disclosure of an expert witness report. The expert was de-

posed about a month after the date when his report was disclosed, and he identified two additional opinions which he had reached not identified in his Rule 26(a)(2)(B) disclosure. About six months later, over a month after defendants' disclosures were due, ten days before the close of discovery and over four months before trial, plaintiffs' counsel informed defendants' counsel that the expert had obtained some additional information and submitted a supplemental Rule 26(a)(2)(B) disclosure including the additional opinions which the expert had stated during his deposition and reference to the additional information which he had obtained. The Court considered whether the supplemental expert witness report should be excluded discussing the interplay between Rule 26(a)(2)(B) and Rule 26(e)(1) and a local rule of the Court. Apparently finding no limitation upon Rule 26(e)(1) supplementation in the scheduling order, the Court found that under Rule 26(e)(1), supplemental expert disclosures required by Rule 26(a)(2)(B) were due no later than 30 days before trial unless otherwise ordered by the Court under Rule 26(a)(3). The Court stated as follows:

> [I]n the absence of contrary direction by the Court, a party could assert, with technical correctness, that the deadline for supplementing Rule 26(a)(2)(B) expert disclosures could be as late as the filing of pretrial submissions as required by Local Rule .... However, since the rules of procedure are to be construed to reach just, speedy and inexpensive results, Fed. R.Civ.P. 1, a party who delays supplementing Rule 26(a)(2)(B) expert disclosures until the filing of pretrial submissions, absent compelling reasons for doing so, should not expect the Court automatically to permit the expert to testify at trial about the newly disclosed information for such action would condone 'trial by ambush.'

*Tucker*, 49 F.Supp.2d at 460. The Court stated further as follows:

> [I]n light of the large window of time allowed by [Rules 26(a)(2)(B) and 26(e)(1)] to supplement expert disclosures, the Court should not automatically permit testimony at trial as to the newly discovered information if, considering the facts of the

case, it is convinced that doing so would be unfair or cause undue delay or expense. In making such a determination, the Court should consider the following factors: (1) the explanation for making the supplemental disclosure at the time it is made; (2) the importance of the supplemental information to the proposed testimony of the expert, and the expert's importance to the litigation; (3) potential prejudice to an opposing party; and (4) the availability of a continuance to mitigate any prejudice. *Tucker,* 49 F.Supp.2d at 461. Upon considering and weighing these factors, the Court found that the supplemental expert report should not be excluded under the circumstances but defendants should be permitted reasonable additional discovery and the opportunity to supplement their expert disclosure and move to designate rebuttal experts. *Id.,* 49 F.Supp.2d at 463.

Courts resort to Rule 37(c)(1) under distinctly different circumstances. In *Southern States Rack and Fixture, Inc., v. Sherwin-Williams Company,* 318 F.3d 592 (4th Cir. 2003), the Fourth Circuit considered whether the District Court properly excluded Plaintiff's expert witness' new third opinion as he attempted to introduce it in testifying at trial under Rule 37(c)(1). The witness had apparently disclosed his further opinion to Plaintiff's counsel two days earlier on the day trial began. The Court adopted the five-factor test discussed by the District Court in *Rambus, Inc., v. Infineon Technologies AG,* 145 F.Supp.2d 721 (E.D.Va.2001), and applied by the District Court in *Southern States.*[7] The Court recognized that "[t]he language of Rule 37(c)(1) provides two exceptions to the general rule excluding evidence that a party seeks to offer but has failed to properly disclose: (1) when the failure to disclose is 'substantial[ly] justifi[ed],' and (2) when the

nondisclosure is 'harmless.'" *Southern States,* 318 F.3d at 596. The Court stated as follows respecting the five-factor test:

[W]e believe that the five factors articulated in *Rambus* are helpful in determining whether a party's nondisclosure of evidence was substantially justified or harmless. Four of these factors—surprise to the opposing party, ability to cure that surprise, disruption of the trial, and importance of the evidence—relate mainly to the harmlessness exception, while the remaining factor—explanation for the nondisclosure—related primarily to the substantial justification exception. We therefore hold that in exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Southern States,* 318 F.3d at 596–97. The Court found that the District Court had correctly excluded the expert's new third opinion based upon a balancing of the five factors. As the Court noted, the District Court found that the defendant was surprised by the expert's new third opinion as he attempted to offer it at trial and the defendant could not cure the surprise through cross examination. The District Court further found that a continuance in order that plaintiff could address the new expert opinion would significantly disrupt the trial. The District Court found the plaintiff failed to explain why it did not disclose the opinion by supplementing its

---

7. In *Rambus,* the District Court considered whether to exclude the supplemental report of an expert witness substantially changing the basis for and substance of his opinions on the issues of infringement and validity of certain patents submitted over a month after the close of expert discovery and a week before trial was scheduled to begin under Rule 37(c)(1) and Rule 16(f) stating that "[t]he factors to be considered under [Rule 16(f)] are substantially the same as those considered under Rule 37(c): (1) the reasons for

failing to name the witness [or failing to complete expert witness reports]; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Rambus,* 145 F.Supp.2d at 736. The Court concluded that exclusion of the expert's testimony respecting certain issues was appropriate in view of the plaintiff's untimely disclosure of the expert's report.

**544**

discovery responses when it learned of it. While the District Court found that the opinion was important because it might have been helpful to the jury, nevertheless this was all the more reason why it should have been disclosed earlier. *Id.,* at 596–98.

The Court concludes in view of these decisions that consideration of Plaintiff's Motions to Exclude the further reports of Mr. Gunday, Dr. Nutter and Dr. Adkins is appropriate under Rule 16(f), not Rule 37(c)(1). The automatic or self-executing exclusion provision of Rule 37(c)(1) is not applicable therefore though, if a violation of Rule 16(f) is found, the Court should apply the five-factor test in considering whether the reports should be excluded. *See Rambus, supra.*

■ The Court next considers Plaintiff's assertion that the expert reports were not submitted timely. In this case, while deadlines were established for submitting expert reports initially and then reports in rebuttal, no deadline was specified for supplementing expert reports. *See* Rule 26, Advisory Committee Notes, 1993 Amendments, Subdivision (e), stating that "[i]t may be useful for the scheduling order to specify the time or times when supplementations should be made. * * * [W]ith respect to experts from whom a written report is required under subdivision (a)(2)(B), changes in the opinions expressed by the expert whether in the report or at a subsequent deposition are subject to a duty of supplemental disclosure under subdivision (e)(1)." The Rule 26(e) requirement that parties supplement their discovery responses is not eliminated just because the stipulated or ordered schedule does not include a deadline for submitting supplemental responses. Rather, it is presumed that the parties agreed or the Court intended that the time for providing supplemental reports would be as supplied by the Rules.[8] In view of the Court's decision in *Tucker, supra,* the Court concludes that the parties in this case can

submit supplements to Rule 26(a)(2)(B) disclosures as late as April 29, 2005, when the Court has required the parties to make all Rule 26(a)(3) pretrial disclosures, subject, of course, upon objection to consideration for whether they should be excluded under the five-factor test. (Document No. 417.) If the expert reports in issue are deemed supplements in conformity with Rule 26(e)(1), they were clearly filed timely. If the expert reports are determined to contain information and opinions which should have been disclosed initially and therefore not to be in conformity with Rule 26(e)(1), then it follows necessarily that the reports were submitted in violation of the agreed upon and ordered schedule in the case, and the Court must apply the five-factor test. The parties make compelling arguments for their positions. Plaintiff insists that the second reports of the experts contain new theories which should have been disclosed on February 25, 2004, and cannot be deemed supplemental under Rule 26(e)(1). Defendants, on the other hand, state that they were lacking information and the depositions of employees of the manufacturer of relevant devices occurred on April 2, 2004, which prompted them to submit their further reports. Without sorting through these assertions to determine what parts of the reports might or might not be properly deemed supplemental, the Court will assume that the reports are not properly regarded supplements under Rule 26(e)(1) and Defendants have submitted the reports beyond the time designated in the schedule for doing so.

Applying the five-factor test, the Court finds that Plaintiff has not experienced surprise or prejudice as a consequence of the submissions of the reports that has not or cannot be cured. KSEA identified one of the two devices which Mr. Gunday mentions in his second report as invalidating certain claims under the '801 patent in interrogatory responses. (Document No. 368, Exhibit 1.)

---

**8.** The Court's Local Rule of Civil Procedure 3.01(b) provides for a three stage schedule for disclosure of expert witness reports absent the parties' stipulation or the Court's ordering of a different schedule. Under the Rule, no later than sixty days before the discovery completion date, parties must make expert disclosures respecting all issues upon which they bear the burden of proof. No later than forty days before the close of discovery, the parties not bearing the burden of proof must submit their expert reports. Finally, no later than twenty days before the close of discovery, all parties must make expert disclosures "intended solely to contradict or rebut evidence on the same issue identified by another party under F.R.Civ. P. 26(a)(2)(B)."

 

Dr. Nutter relies upon information respecting both devices in his initial report, and Dr. Adkins relies upon information respecting one of them. Plaintiff's experts discuss the operation manuals for the devices in their rebuttals. (Document No. 350, Exhibits 2 and 3.) Having the initial three expert reports, Plaintiff could clearly see that Defendants were relying upon the operation manuals for the two further devices in support of their defenses, and Plaintiff's experts were obviously familiar with them. Additionally, KSEA and Stryker submitted the second or supplemental expert reports of Mr. Gunday, Dr. Nutter and Dr. Adkins within the time period allotted for expert discovery and before they were deposed. Plaintiff therefore had an opportunity to question the experts respecting their further reports. Trial of the case has not been disrupted as it has been rescheduled for May 31, 2005, and, as the Court determined above, Plaintiff has had and continues to have the opportunity to supplement its experts' reports in view of the further information and opinions contained in Defendants' experts' reports. The Court finds therefore that Plaintiff's Motions to Exclude must be denied.

### 2. *The Motions to Strike the Experts' Declarations.*

The Court has examined the Declarations of Dr. Adkins and Dr. Nutter (Document Nos. 305 and 306.) in view of Plaintiff's Motion to Strike them and finds that as a general matter the statements contained in paragraphs which Plaintiff asserts are new opinions and conclusions relate to the previously identified and referenced devices and operation manuals. The Court has further examined Plaintiff's Response to Stryker's Motion (Document No. 330.) and Stryker's Reply (Document No. 352.), and finds that Plaintiff has submitted the reports of its experts and addressed Stryker's contentions with respect to the devices and their operation manuals. The Court concludes for the same reasons stated above that Plaintiff is not prejudiced by Stryker's submission of its experts Declarations, and Plaintiff's Motions to Strike them must also be denied.

Accordingly, it is hereby **ORDERED** that Plaintiff's Motion to Exclude Erhan Gunday's Untimely April 27, 2004, Expert Report (Document No. 337), Motion to Strike New Opinions Contained in Dr. Roy S. Nutter, Jr's Declaration Dated May 27, 2004 (Document No. 341.), Motion to Strike New Opinions Contained in Dr. John M. Adkins' Declaration Dated June 1, 2004 (Document No. 344.), Motion to Exclude Dr. John M. Adkins' Untimely May 21, 2004, Expert Report (Document No. 347) and Motion to Exclude Dr. Roy S. Nutter's Untimely May 21, 2004, Expert Report (Document Nos. 349.) are **DENIED**.

In accordance with Rule 72(a) of the Federal Rules of Civil Procedure, the rulings set forth above on these non-dispositive motions may be contested by filing, within 10 days, objections to this Order with Chief Judge Faber. If objections are filed, the District Court will consider the objections and modify or set aside any portion of the Order found to be clearly erroneous or contrary to law.

The Clerk is hereby directed to send a copy of this Order to counsel of record.